IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EMG TECHNOLOGY, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 6:08-cv-447 (LED) |
| | § | |
| APPLE, INC., AMERICAN AIRLINES, | § | **Jury Trial Demanded** |
| INC., BLOOMBERG, L.P., | § | |
| CONTINENTAL AIRLINES, INC., | § | |
| UNITED PARCEL SERVICE, INC. | § | |
| | § | |
| *Defendants.* | | |

**DEFENDANT CONTINENTAL AIRLINES, INC.'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S
THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Defendant Continental Airlines, Inc. (hereinafter "Continental"), through its undersigned counsel, answers the allegations of Plaintiff's THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT (hereinafter "the Complaint"), filed by Plaintiff EMG Technology, LLC (hereinafter "EMG"), as follows. Except as expressly stated hereinafter, Continental denies each allegation contained in the complaint.

**ANSWER**

**ANSWERS TO JURISDICTION AND VENUE ALLEGATIONS**

1.      Continental admits that EMG is bringing an action for alleged patent infringement under the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq.* Continental denies the remainder of the allegations set forth in Paragraph 1 of the Complaint.

2.      Continental admits that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over EMG's claims of alleged patent infringement. Continental denies the remainder of the allegations set forth in Paragraph 2 of the Complaint.

Dockets.Justia.com

3.     Continental admits that it has contacts with the jurisdiction sufficient to support a claim for personal jurisdiction in this case.  Continental denies the remainder of the allegations set forth in Paragraph 3 on the Complaint including specifically, but not limited to, the allegation that it has engaged in the use and sale of products and systems that practice the subject matter recited in any patent involved in this action.

4.     At this time, Continental is not challenging the propriety of venue in this district under 28 U.S.C. §§ 1391 and 1400.  Continental denies that this is the most convenient venue under 28 U.S.C. § 1404 and reserves the right to move to transfer or move to change this case to a more convenient forum.  Continental denies the remainder of the allegations set forth in Paragraph 4 of the Complaint including specifically, but not limited to, the allegation that a substantial part of the events or omissions giving rise to the alleged claims occurred in this District.

## ANSWERS TO PARTIES ALLEGATIONS

5.     Continental lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint and therefore denies the same.

6.     Continental lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint and therefore denies the same.

7.     Continental lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and therefore denies the same.

8.     Continental lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and therefore denies the same.

9.     Continental admits that it is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1600 Smith Street, Houston, Texas 77002.

Continental admits that it is in the business of airline travel and cargo services. Continental denies the remainder of the allegations set forth in Paragraph 9 of the Complaint.

10.     Continental lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and therefore denies the same.

## ANSWERS TO PATENTS ALLEGATIONS

11.     Continental admits that U.S. Patent No. 7,441,196 ("the '196 patent") is entitled "Apparatus and Method of Manipulating a Region on a Wireless Device Screen for Viewing, Zooming and Scrolling Internet Content," and that the face of the patent indicates that it issued on October 21, 2008, and that Exhibit "A" to the Complaint included a copy of the '196 Patent. Continental denies the remainder of the allegations set forth in Paragraph 11 of the Complaint.

12.     Continental admits that U.S. Patent No. 7,020,845 ("the '845 patent"), is entitled "Navigating Internet Content on a Television Using a Simplified Interface and a Remote Control," that the face of the patent indicates that it issued on March 28, 2006, and that Exhibit "B" to the Complaint included a copy of the '845 Patent. Continental denies the remainder of the allegations set forth in Paragraph 12 of the Complaint.

## ANSWERS TO FIRST CLAIM ALLEGATIONS

13.     Continental refers to and incorporates by reference the responses in Paragraphs 1–12 above.

14.     Continental denies the allegations of Paragraph 14 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

**15.**     Continental denies the allegations of Paragraph 15 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

**16.**     Continental denies the allegations of Paragraph 16 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

## ANSWERS TO SECOND CLAIM ALLEGATIONS

**17.**     Continental refers to and incorporates by reference the responses in Paragraphs 1-16 above.

**18.**     Continental denies the allegations of Paragraph 18 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

**19.**     Continental denies the allegations of Paragraph 19 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

**20.**     Continental denies the allegations of Paragraph 20 of the Complaint as they relate to Continental, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations and therefore denies the same.

## ANSWERS TO JURY DEMAND

**21.**     With regard to Paragraph 21 of the Complaint, no admission or denial is required.

## AFFIRMATIVE DEFENSES

## FIRST DEFENSE:  FAILURE TO STATE A CLAIM

EMG fails to state a claim against Continental for which any relief can be granted.

## SECOND DEFENSE:  NON-INFRINGEMENT

Continental has not infringed, induced others to infringe, or contributed to the infringement either literally or under the Doctrine of Equivalents of, any claim of the '845 Patent or the '196 Patent.

## THIRD DEFENSE:  INVALIDITY

The '845 Patent and the '196 Patent and each asserted claim therein are invalid for failure to comply with the grounds specified in Part II of Title 35 United States Code as a condition for patentability, and, in particular, 35 U.S.C. §§ 101, 102, 103, and 112.

## FOURTH DEFENSE:  ABSENCE OF LIABILITY

Continental is without liability in the civil action as a result of other facts and circumstances allowed as a defense by, including but not limited to, 35 U.S.C. § 287.

## FIFTH DEFENSE:  PROSECUTION HISTORY ESTOPPEL

Because of proceedings in the United States Patent and Trademark Office during the prosecution of the applications which resulted in the '845 Patent and the '196 Patent, EMG is estopped to claim a construction of the asserted claims in the identified patents that would cause any such valid claim thereof to cover or include any of Continental's products or services.

## SIXTH DEFENSE:  LACHES

EMG's claims are barred, in whole or in part, by the doctrine of laches.

## SEVENTH DEFENSE: UNENFORCEABILITY

The '196 Patent is unenforceable in its entirety.

## COUNTERCLAIMS

### The Parties

1.      Counterclaimant, Continental, is a corporation organized under the laws of the State of Delaware, having its principal place of business at 1600 Smith Street, Houston, Texas 77002.

**2.** Counterclaim Defendant, EMG, has represented in a pleading filed with this Court that it is a limited liability company organized under the laws of the State of California, having its principal place of business in Los Angeles, California.

**Jurisdiction and Venue**

**3.** Subject matter jurisdiction in the Court is based upon 28 U.S.C. §§ 2201(a), 1338(a), and 1331.

**4.** Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1331, 1332(a), 1391(b) and/or 1400.

**5.** Counterclaim Defendant EMG has charged Continental with committing acts of infringement of the '845 Patent. A justifiable controversy exists between Counterclaim Defendant EMG and Continental concerning the enforceability, validity, and scope of the '845 Patent and with respect to the liability for the alleged infringement thereof by Continental.

**6.** Counterclaim Defendant EMG has charged Continental with committing acts of infringement of the '196 patent. A justifiable controversy exists between Counterclaim Defendant EMG and Continental concerning the enforceability, validity, and scope of the '196 Patent and with respect to the liability for the alleged infringement thereof by Continental.

**FIRST COUNTERCLAIM:**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '845 PATENT**

**7.** Continental re-alleges the allegations of the previous paragraphs of its counterclaims.

**8.** None of the claims of the '845 Patent have been directly infringed by Continental.

**9.** None of the claims of the '845 Patent have been contributorily infringed by Continental. For example, and without limitation:

**9.1**    To contributorily infringe a patent, an entity must "offer to sell or sells within the United States" or "import[] into the United States" "a component of a patented machine, manufacture, combination or composition" or "a material or apparatus for use in practicing a patented process" of the claimed subject matter.  *See* 35 U.S.C. § 271(c).

**9.2**    Continental has not offered to sell or sold within the United States, or imported into the United States, any of the Internet websites upon which EMG's claims of infringement of the '845 Patent are based.

**9.3**    Continental has not offered to sell or sold within the United States, or imported into the United States, any material or apparatus for use in practicing the methods recited in any of claims of the '845 Patent, including specifically claims 1-5, 11-13, 17, 19, 21, 23, 25, 27, 29, 31, or 33-36.

**9.4**    Continental Airlines has not offered to sell or sold within the United States, or imported into the United States, any component of the computer readable storage media recited in any of claims of the '845 Patent, including specifically claims 6-10, 14-16, 18, 20, 22, 24, 26, 28, 30, or 32.

**9.5**    To contributorily infringe a patent, an entity must offer to sell or sell within the United States or import into the United States a component of a patented machine, manufacture, combination or composition or a material or apparatus for use in practicing a patented process of the claimed subject matter "knowing the same to be especially made or especially adapted for use in an infringement."

**9.6**    Prior to the service of a complaint in this action, Continental Airlines did not have knowledge of the '845 Patent and, therefore, could not have engaged in any acts of contributory infringement with respect to the '845 Patent prior to that date.

**10.** None of the claims of the '845 Patent have been infringed by active inducement by Continental. For example and without limitation:

**10.1** To induce infringement of a patent, an entity must, at a minimum, have knowledge of the patent.

**10.2** Prior to the service of a complaint in this action, Continental Airlines did not have knowledge of the '845 Patent and, therefore, could not have engaged in any acts of induced infringement with respect to the '845 Patent prior to that date.

## SECOND COUNTERCLAIM:

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '196 PATENT

**11.** Continental re-alleges the allegations of the previous paragraphs of its counterclaims.

**12.** None of the claims of the '196 Patent has been directly infringed by Continental. For example and without limitation:

**12.1** All of the claims of the '196 Patent recite a method step, or a medium for performing a method step, of "displaying on-line content accessed via the Internet."

**12.2** Continental does not engage in this act. For example, Continental's Internet website, accessed through its Continental.com domain name, does not display content. Such display, if it occurs, is accomplished through a browser or other device that accesses Continental's website. Because Continental does not engage in this display step, or provide the medium that performs that display, it can not directly infringe any of the claims of the '196 Patent.

**12.3** All of the claims of the '196 Patent require the display of information on any one of a "television, web appliance, console device, handheld device, wireless device or cellular phone."

**12.4** Continental does not engage in such acts and, as such, can not directly infringe any of the claims of the '196 Patent.

**12.5** All of the claims of the '196 Patent require the performance of, or a medium that results in the performance of, the steps of "receiving a user selection of one of [a plurality of displayed] navigation options" and "forwarding the selected navigation across the internet to a server . . . ."

**12.6** Continental does not engage in such acts. Its Internet websites do not receive user selections as recited in the claims, or forward such selections across the Internet to a server as recited in the claims. Any such reception and/or forwarding are done by devices not made, used, sold, or offered to sell, or imported into the United States by Continental. As such, Continental can not directly infringe any of the claims of the '196 Patent.

**12.7** All of the claims of the '196 Patent require the performance of, or a medium that results in the performance of, the step of "manipulating a region of [a] screen for viewing and zooming and/or scrolling of the displayed on-line content."

**12.8** Continental does not engage in such acts. Its Internet websites do not receive user selections as recited in the claims, or forward such selections across the Internet to a server as recited in the claims. Any such reception and/or forwarding are done by devices not made, used, sold, or offered to sell, or imported into the United States by Continental. As such, Continental can not directly infringe any of the claims of the '196 Patent.

**13.** None of the claims of the '196 Patent have been contributorily infringed by Continental. For example, and without limitation:

**13.1**     To contributorily infringe a patent, an entity must "offer to sell or sells within the United States" or "import[s] into the United States" "a component of a patented machine, manufacture, combination or composition" or "a material or apparatus for use in practicing a patented process" of the claimed subject matter.  *See* 35 U.S.C. § 271(c).

**13.2**     Continental has not offered to sell or sold within the United States, or imported into the United States, any of the Internet websites upon which EMG's claims of infringement of the '196 Patent are based.

**13.3**     Continental has not offered to sell or sold within the United States, or imported into the United States, any material or apparatus for use in practicing the methods recited in any of claims of the '196 Patent, including specifically method claims 1-24, 40-53, or 75.

**13.4**     Continental Airlines has not offered to sell or sold within the United States, or imported into the United States, any component of the machine readable medium recited in any of claims of the '196 Patent, including specifically claims 25-39, 54-73, and 76.

**13.5**     To contributorily infringe a patent, an entity must offer to sell or sell within the United States, or import into the United States, a component of a patented machine, manufacture, combination, or composition or a material or apparatus for use in practicing a patented process of the claimed subject matter "knowing the same to be especially made or especially adapted for use in an infringement."

**13.6**     Prior to the service of a complaint in this action, Continental Airlines did not have knowledge of the '196 Patent and, therefore, could not have engaged in any acts of contributory infringement with respect to the '196 Patent prior to that date.

14.     None of the claims of the '196 Patent have been infringed by active inducement by Continental. For example and without limitation:

    14.1     To induce infringement of a patent, an entity must, at a minimum, have knowledge of the patent.

    14.2     Prior to the service of a complaint in this action, Continental Airlines did not have knowledge of the '196 Patent and, therefore, could not have engaged in any acts of induced infringement with respect to the '196 Patent prior to that date.

## THIRD COUNTERCLAIM:

## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '196 PATENT

15.     The '196 Patent is unenforceable in its entirety and has been unenforceable since the date of its issuance.

16.     United States Patent No. 6,600,497 ("the '497 Patent") issued on July 29, 2003. As of its issuance date to the present, the '497 Patent has been owned by: Grant Gottfurcht 2003 Irrevocable Trust (25%); Marlo Longstreet 2003 Irrevocable Trust (25%) and Elliot A. Gottfurcht (50%).

17.     During the prosecution of the application that ultimately issued as the '196 Patent, U.S. Patent Application Serial No. 11/373,324 ("the '324 Application"), all of the claims of the application were rejected on grounds of double patenting over the '497 Patent and the '845 Patent.

18.     In response to the rejection of the claims of the '324 Application over the '497 Patent, a "TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A 'PRIOR' PATENT" was submitted to the United States Patent and Trademark Office on behalf of each of the then owners of the '324 Application. Each instrument specifically identified the

'497 Patent as a "prior patent" and explicitly stated that "The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns." The date on all such instruments was 06/06/2008.

19.    In response to the rejection of the claims of the '324 Application over the '845 Patent, a "TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A 'PRIOR' PATENT" was submitted to the United States Patent and Trademark Office on behalf of each of the then owners of the '324 Application. Each instrument specifically identified the 845 Patent as a "prior patent" and explicitly stated that "The owner hereby agrees that any patent so granted on the instant application shall be enforceable only for and during such period that it and the prior patent are commonly owned. This agreement runs with any patent granted on the instant application and is binding upon the grantee, its successors or assigns." The date on all such instruments was 06/06/2008.

20.    On August 7, 2008, the '497 Patent ceased to be commonly owned with the '324 Application (which later issued as the '196 Patent). On that date, an assignment was issued transferring all of the right, title, and interest in and to the '324 Application from Elliot A. Gottfurcht to an entity with no ownership rights in the '497 Patent. From that date to the present, the '324 Patent and the '196 Patent, which issued from the '324 Application, have not been commonly owned with the '497 Patent.

21.    On August 7, 2008, the '845 Patent ceased to be commonly owned with the '324 Application (which later issued as the '196 Patent). On that date, an assignment was issued transferring all of the right, title, and interest in and to the '324 Application from Elliot A.

Gottfurcht to an entity that, at the time, had no ownership rights in the '845 Patent. From that date to January 2, 2009, the '845 Patent and the '196 Patent were not commonly owned.

22.     Because the '196 Patent was not commonly owned with the '497 Patent when the '196 Patent issued, and has not been commonly owned with the '497 Patent to the present, the '196 Patent is and has been unenforceable in its entirety since its issuance to the present by virtue of the express language of the TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A 'PRIOR' PATENT that was presented during the prosecution of the '324 Application that referenced the '497 Patent.

23.     Because the '196 Patent was not commonly owned with the '845 Patent when the '196 Patent was issued, and was not commonly owned with the '845 Patent until January 2, 2009, the '196 Patent is unenforceable over that period, and no acts of infringement can be found to have occurred over that period and no damages can be assessed over that period, by virtue of the express language of the TERMINAL DISCLAIMER TO OBVIATE A DOUBLE PATENTING REJECTION OVER A 'PRIOR' PATENT that was presented during the prosecution of the '324 Application that referenced the '845 Patent.

## FOURTH COUNTERCLAIM:

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '845 PATENT

24.     Continental re-alleges the allegations of the previous paragraphs of its counterclaims.

25.     The asserted claims of the '845 Patent are invalid for failure to comply with the grounds specified in Part II of Title 35 United States Code as a condition for patentability, and, in particular, 35 U.S.C. §§ 102, 103, and 112.

25.     The earliest effective filing date to which the claims of the '845 Patent are entitled is March 3, 2000. For example and without limitation:

**25.1** The application that issued as the '845 Patent was filed with the United States Patent and Trademark Office on March 3, 2000.

**25.2** Prior to the filing of the application that issued as the '845 Patent on March 3, 2000, not one of the named inventors had reduced the subject matter of any of the independent claims of the '845 Patent to practice, including, specifically, claims 1 or 6.

**25.3** The application that ultimately issued as the '845 Patent referenced United States Patent Application No. 09/440,214 ("the '214 Application") in the "Related U.S. Application Data" section. The '214 Application does not provide adequate written support for any of the asserted claims of the '845 Patent. The claims of the '845 Patent, therefore, are not entitled to the November 15, 1999 filing date of the '214 Application. For example, and without limitation:

> **25.3.1** All of the claims of the '845 Patent specifically recite a "webpage associated with a sister site" and a step of providing a simplified navigational interface for a webpage "by the sister site." The '214 Application does not include: (a) the words "sister site;" (b) any written description of a sister site, or (c) any written description of the use of a sister site to provide a simplified navigational interface for a webpage. The '214 Application, therefore, fails to provide a written description of the subject matter of the claims of the '845 Patent as required by 35 U.S.C. § 112.

> **25.3.2** Claims 3 and 8 of the '845 Patent specifically recite the steps of "transcoding a hyper text markup language (HTML) page into an extensible markup language (XML) page; and applying a document type definition (DTD) to the XML page." The '214 Application does not include any written description of

the steps of transcoding a HTML page into an XML page and then applying a DTD to the XML page. The only discussion of the use of a DTD in the '214 Application is in connection with the use of a DTD with information from a content partner. There is no written description in the '214 Application of a content partner providing an HTML page. The only description of HTML in the '214 Application is connection with a non-content partner. There is no written description in the '214 Patent of the application of a DTD to a page provided by a non-content partner. As such, the '214 Application does not contain any written description of the steps of transcoding an HTML page into an XML page and then applying a DTD to the XML page. The '214 Application, therefore, fails to provide a written description of the subject matter of claims 3 and 8 of the '845 Patent, and all claims dependent thereon, as required by 35 U.S.C. § 112.

**25.3.3**   Claims 5 and 10 of the '845 Patent specifically recite a step of "applying a cascading style sheet (CSS) to [a] XML page." The '214 Application does not include: (a) the words or phrases "CSS" or "cascading style sheet;" (b) any written description of a "CSS" or "cascading style sheet;" or (c) any written description of a step of applying a cascading style sheet to an XML page." The '214 Application, therefore, fails to provide a written description of the subject matter of claims 5 and 10 of the '845 Patent, and all claims dependent thereon, as required by 35 U.S.C. § 112.

 **25.3.4**  Claims 12 and 15 of the '845 Patent specifically recite a step of "displaying [a] navigation interface on a portable wireless device." The '214 Application does not include: (a) the phrase "portable wireless device"; (b) any

written description of portable wireless device with a display; or (c) any written description of a portable wireless that displays a navigation interface. The only discussion in the '214 Application of a device that does not communicate using wires is of an infrared remote control and of an infrared keyboard. There is no written description in the '214 Application of using either the infrared remote control or the infrared keyboard to display a navigation interface as recited in claims 12 and 15. The '214 Application, therefore, fails to provide a written description of the subject matter of claims 12 and 15 of the '845 Patent, and all claims dependent thereon, as required by 35 U.S.C. § 112.

**25.3.5** Claims 25 and 26 of the '845 Patent specifically recite a webpage that is "publicly accessible." The '214 Application does not include: (a) the phrase "publicly accessible"; or (b) any written description of a webpage that is publically accessible. The '214 Application, therefore, fails to provide a written description of the subject matter of claims 25 and 26 of the '845 Patent, and all claims dependent thereon, as required by 35 U.S.C. § 112.

26.     Prior Art to the '845 Patent as of March 3, 2000, renders the asserted claims invalid under 35 U.S.C. §§ 102 and/or 103.

27.     The asserted claims of the '845 Patent, and each claim in suit of the '845 Patent, are invalid for failure to comply with the grounds specified in 35 U.S.C. § 101.

## FIFTH COUNTERCLAIM:

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '196 PATENT

28.     Continental re-alleges the allegations of the previous paragraphs of its counterclaims.

**29.** The asserted claims of the '196 Patent are invalid for failure to comply with the grounds specified in Part II of Title 35 United States Code as a condition for patentability, and, in particular, 35 U.S.C. §§ 102, 103, and 112.

**30.** The earliest effective filing date to which the claims of the '196 Patent are entitled is March 3, 2000. For example and without limitation:

> **30.1** The application that issued as the '196 Patent was filed with the United States Patent and Trademark Office on March 3, 2000.

> **30.2** Prior to the filing of the application that issued as the '196 Patent, not one of the named inventors had reduced the subject matter of any of the independent claims of the '845 Patent to practice including, specifically, claims 1, 9, 25, or 58.

> **30.3** The application that ultimately issued as the '196 Patent referenced United States Patent Application No. 09/440,214 ("the '214 Application") in the "Related U.S. Application Data" section. The '214 Application does not provide adequate written support for any of the asserted claims of the '196 Patent. The claims of the '196 Patent, therefore, are not entitled to the November 15, 1999 filing date of the '214 Application. For example, and without limitation:

>> **30.3.1** All of the claims of the '196 Patent specifically recite the displaying of "on-line content reformatted from a webpage in a hypertext mark up language (HTML) format into an extensible markup language (XML) format to generate a sister site." The '214 Application does not include: (a) the words "sister site;" (b) any written description of a sister site; or (c) any written the use of a sister site to provide a simplified navigational interface for a webpage. The '214

Application, therefore, fails to provide a written description of the subject matter of the claims of the '196 Patent as required by 35 U.S.C. § 112.

30.3.2   All of the claims of the '196 Patent specifically recite a step of displaying on-line content from a "sister site" where the "sister site" includes "a portion or a whole of content of [a] webpage reformatted to be displayed." The '214 Application does not include any written description reformatting a webpage so that a portion or a whole of the webpage can be displayed as recited in the claims. The '214 Application, therefore, fails to provide a written description of the subject matter of claims of the '196 Patent as required by 35 U.S.C. § 112.

30.3.3   All of the claims of the '196 Patent require a step of displaying on-line content on any one of a "television, web appliance, console device, handheld device, wireless device or cellular phone." The '214 Application does not include: (a) the words or phrases "wireless device" or "cellular phone"; (b) any written description of a handheld device, wireless device, or cellular phone, or (c) any written description of a method of displaying a reformatted web page on a wireless device, handheld device or cellular phone. The only discussion in the '214 Application of a handheld device or a device that does not communicate using wires is of an infrared remote control and of an infrared keyboard. There is no written description in the '214 Application of using either the infrared remote control or the infrared keyboard to display the content recited in the claims of the '196 Patent. The '214 Application, therefore, fails to provide a written description of the subject matter of the claims of the '196 Patent as required by 35 U.S.C. § 112.

**30.3.4**  All of the claims of the '196 Patent recite a step of "manipulating a region of [a] screen for viewing and zooming and/or scrolling of [] displayed on-line content."  The '214 Application does not include: (a) any of the phrases or words "zoom," "zooming," "manipulating," or "scrolling"; or (b) any written description of the manipulation of a region of a screen for viewing and zooming and/or scrolling of displayed on-line content.  The '214 Application, therefore, fails to provide a written description of the subject matter of the claims of the '196 Patent as required by 35 U.S.C. § 112.

**31.**  Prior Art to the '196 Patent as of March 3, 2000, renders the asserted claims invalid under 35 U.S.C. §§ 102 and/or 103.

**32.**  The asserted claims of the '196 Paten are invalid for failure to comply with the grounds specified in 35 U.S.C. § 101.

## SIXTH COUNTERCLAIM:

## FALSE MARKING

**33.**  Continental re-alleges the allegations of the previous paragraphs of its counterclaims.

**34.**  EMG has falsely marked at least one of its products with patent numbers of patents that do not cover the product, in violation of the patent laws of the United States.  *See* 35 U.S.C. § 292.

**35.**  An example of EMG's false marking is shown at the MallTV website available at http://www.malltv.com (hereinafter the "MallTV Website").  On information and belief, this website is owned and controlled by one or more of the principals of EMG.  This website states "MallTV.com operates on proprietary technology that is protected by one or more of the following United States Patents:  U.S. Patent Number 6,600,497 U.S. Patent Number 6,611,881

U.S. Patent Number 7,020,845 U.S. Patent Number 7,194,698 U.S. Patent Number 7,441,196 . . . .”

36.     The MallTV Website does not utilize the subject matter of any of the claims of United States Patent No. 6,600,497 (“the ‘497 Patent”).  For example and without limitation:

36.1    Among other things, all of the claims of the ‘497 Patent are directed to a method or apparatus involving a step or device for displaying a two-dimensional navigational matrix having a plurality of cells, where each cell is associated with a “unique input.”

36.2    Claims 1-8 of the ‘497 Patent require a method step of “receiving a first key press event at a processor on [a] client node . . . the first key press corresponding uniquely to cell in a matrix.”

36.3    The MallTV Website does not perform, or enable the performance of, the method step of “receiving a first key press event at a processor on [a] client node . . . the first key press corresponding uniquely to cell in a matrix” as required by claims 1-8.  The MallTV Website is navigated by one moving a mouse or other pointing device over different parts of the site and then “clicking” the mouse or other pointing device.  That “point and click” navigation is not done through receiving a first key press corresponding uniquely to a cell in a matrix as recited in claims 1-8.  This point was expressly conceded during the prosecution of the ‘497 Patent.  *See, e.g.,* Amendment and Response to Office Action (Faxed 04-01-02) at 4 (“. . . Applicants have been unable to identify and the Examiner has pointed to no teaching or suggestion of a unique input associated with each cell of an existing layer.  . . . Applicants note that the fact that one can click on an icon, move a mouse and click on the different icon fails to teach or suggest a unique input.  A mouse

click is still a mouse click regardless of where positioned.").

**36.4**    Claims 9-19 of the '497 Patent all require an apparatus that includes a "user input device permitting a unique input corresponding to each cell of a current two-dimensional layer of the navigational  matrix."

**36.5**    The MallTV Website does not include, and does not provide, a "user input device" as required by claims 9-19.  Also, as noted above, the navigation of the MallTV Website is not accomplished through the use of a user input device that permits a unique input corresponding to each cell of a navigational matrix.  As acknowledged during the prosecution of the '497 Patent, this element is critical to the claimed subject matter.  *See, e.g.,* Amendment and Response to Office Action (Received 07-18-02 at 3-4) ("Even more significant is the utter absence in either of the referenced of the user input device permitting a <u>unique input corresponding to each cell of a current two-dimensional layer of navigation matrix</u>.  By way of example, although <u>Jones</u> teaches that when a mouse is over one of the links and clicks thereon, it opens a node in the hierarchy this fails to teach or suggest the unique input associated with each cell of a current two-dimensional layer of navigation matrix.  Moreover, since a mouse click is still a mouse click, wherever it happens to occur, a mouse fails to provide the ability to supply the <u>unique inputs</u> as that term is used by Applicants.  When unique inputs are used, traversal of the matrix is independent of cursor position.") (emphasis in original).

**36.6**    Claim 20 of the '497 Patent requires an apparatus that includes "a network interface to receive a unique input corresponding to each cell of a current two-dimensional layer of the navigational matrix."

**36.7** The MallTV Website does not include, and does not provide, "a network interface to receive a unique input corresponding to each cell of a current two-dimensional layer of the navigational matrix" as required by claim 20. As noted above, the navigation of the MallTV Website is accomplished through the use of a "point-and-click" interface, not through the use of "unique input[s]" as required by claim 20. *See, e.g.,* Appeal Brief at 6-7 ("Overview of the Invention . . . Each primary navigation option is associated with a unique input, such as numerical digits 1-9 . . . . This format of navigation is believed to be significantly more practical than traditional clicking on hyperlinks when navigating for example, internet content over a television set. Moreover, this ability to navigate from layer to layer with single unique inputs is significantly more efficient than where it is necessary to scroll through the options such as by pressing repeated tabs or arrow keys and then pressing enter to activate the link once reached.").

**37.** Because of the clear inapplicability of the claims of the '497 Patent to the MallTV Website, EMG has no good faith basis to believe that the claims of the '497 Patent apply to the MallTV Website and no good faith basis for including the '497 Patent number on the MallTV Website.

**38.** The MallTV Website does not utilize the subject matter of any of the claims of United States Patent No. 6,611,881 (the "881 Patent"). For example, and without limitation:

**36.1** Among other things, all of the claims of the '881 Patent require the performance of a method including the steps of "providing a transportable recordable medium (TRM) . . ." and "processing a monetary transaction such that a financial account data on the TRM is accessed."

36.2    The MallTV Website does not perform either of the steps of: "providing a transportable recordable medium (TRM) . . ." or  "processing a monetary transaction such that a financial account data on the TRM is accessed."

36.3    Among other things, all of the claims of the '881 Patent require the performance of a method including the steps of "providing a transportable recordable medium (TRM) . . ." and "transferring an activity data to a user accessible location derived from the TRM."

36.4    The MallTV Website does not perform either of the steps of "providing a transportable recordable medium (TRM) . . ." or "transferring an activity data to a user accessible location derived from the TRM."

39.    Because of the clear inapplicability of the claims of the '881 Patent to the MallTV Website, EMG has no good faith basis to believe that the claims of the '881 Patent apply to the MallTV Website and no good faith basis for including the '881 Patent number on the MallTV Website.

40.    The MallTV Website does not utilize the subject matter of any of the claims of United States Patent No. 7,020,845 (the "845 Patent").  For example, and without limitation:

38.1    Among other things, all of the claims of the '845 Patent require the performance of a method, or media that when executed results in the performance of a method including the steps of: (a) providing a webpage associated with a sister site; and (b) providing a simplified navigation interface for the webpage by the sister suite.

38.2    The MallTV Website is not a "webpage associated with a sister site" as required

by all of the claims of the '845 Patent.

    **38.3**    The MallTV Website does not provide "a simplified navigation interface for [an associated] webpage."

**41.**    Because of the clear inapplicability of the claims of the '845 Patent to the MallTV Website, EMG has no good faith basis to believe that the claims of the '845 Patent apply to the MallTV Website and no good faith basis for including the '845 Patent number on the MallTV Website.

**42.**    The MallTV Website does not utilize the subject matter of any of the claims of United States Patent No. 7,194,698 (the "698 Patent"). For example, and without limitation:

    **42.1**    All of the claims of the '698 Patent require either a method or device for displaying, or a device for receiving content accessed via the internet, wherein the received content is associated with the selected advertisement, and wherein the content accessed via the internet is formatted for navigation with "unique inputs."

    **42.2**    The MallTV Website does not display or receive content accessed via the internet where the content is formatted for navigation with "unique inputs." As noted above, the MallTV Website does not include content formatted for navigation with "unique inputs." The MallTV Website is arranged to enable navigation through the movement of a point and click device over a region of the screen and "clicking" on a hyperlink. As previously discussed, during the prosecution of the '497 Patent (which is the parent to the '698 Patent) such traditional use of hyperlinks was distinguished from the use of "unique inputs."

**42.3**    All of the claims of the '698 Patent require either a method or device for displaying, or a device for receiving, "content accessed via the internet," wherein the received content is associated with the selected advertisement, and "wherein the content accessed via the internet is formatted for navigation with unique inputs."

**42.4**    The MallTV Website does not display, and is not a device for receiving, "content accessed via the internet," wherein the received content is associated with a selected advertisement, and "wherein the content accessed via the internet is formatted for navigation with unique inputs." Depending on the device used to access the MallTV Website, the main index webpage that appears when one directs a browser to www.malltv.com is one of: (i) http://www.malltv.com/malltv.html; (ii) http://www.malltv.com/wap/index.html; or (iii) http://www.malltv.com//iPhone/index.html. When a user selects any of the cells depicted on any of the identified webpages, the user is not provided with displayed content associated with a selected advertisement, where the content is accessed via the internet and formatted for navigation with unique inputs.

   **42.4.1**  With respect to certain of the cells displayed on the webpages identified in the previous paragraph, the user is taken to a navigation menu that does not display any "content accessed via the internet [that is] formatted for navigation with unique inputs." The distinction between a menu as provided by the MallTV Website and a display of "content accessed via the internet" that has been "formatted for navigation" was explained in detail during the prosecution of the '698 Patent:

   "Content" is in a preexisting format and is originally resident on the Internet, as part of a web page, for example. . . . As set forth on page 9 of

the application, the XML transcoder repurposes content from any Internet site to "a format suitable for navigation, using the simplified navigation system described further below." . . . In other words, applicant is defining "formatted" content, accessed from the Internet, to mean formatting and repurposing such pre-stored Internet content for navigation. It is simply incorrect to divorce the source of the content, i.e., the Internet, from the formatting action. In this manner, "content accessed via the internet is formatted for navigation with unique inputs," as set forth in all the pending claims. Merely generating a menu with menu items by a processor as set forth in [the prior art] does not disclose, teach or suggest formatting content retrieved from the Internet for navigation. . . . *In applicant's claims, some action must be taken on the Internet retrieved content, i.e., it must be formatted for navigation."*

Brief on Appeal Under 37 C.F.R. § 1.192 at 4-5 (emphasis added).

**42.4.2** With respect to certain other of the cells displayed on the webpages identified in the previous paragraph, the user is taken to third party website that is not formatted for navigation by the MallTV Website. In such instances, the webpages to which the user is taken is a standard, traditionally-navigated, non-reformatted, webpage.

**43.** Because of the clear inapplicability of the claims of the '698 Patent to the MallTV Website, EMG has no good faith basis to believe that the claims of the '698 Patent apply to the MallTV Website and no good faith basis for including the '698 Patent number on the MallTV Website.

**44.** The MallTV Website does not utilize the subject matter of any of the claims of United States Patent No. 7,441,196 (the "196 Patent"). For example, and without limitation:

**44.1** Among other things, all of the claims of the '196 Patent require the display of "on-line content reformatted from a webpage in a hypertext markup language (HTML) format into a extensible markup language (XML) format to generate a sister site."

**44.2** The MallTV Website does not display on-line content reformatted from a

webpage in HTML format into an XML format.

**44.3**    Among other things, all of the claims of the '196 Patent require a display of a two dimensional layer of cells where all or a portion of reformatted online content from a webpage is displayed in one or more of the cells.

**44.4**    The MallTV Website does not display a two dimensional layer of cells where all or a portion of reformatted online content from a webpage is displayed in one or more of the cells.

**44.5**    The MallTV Website does not display a two dimensional layer of cells where all or a portion of reformatted online content from a webpage is displayed in one or more of the cells.

**45.**    Because of the clear inapplicability of the claims of the '196 Patent to the MallTV Website, EMG has no good faith basis to believe that the claims of the '196 Patent apply to the MallTV Website and no good faith basis for including the '196 Patent number on the MallTV Website.

**46.**    The mismarking of the MallTV Website with the patent numbers for the '497, '881, '845, '698 and '196 Patents, coupled with the absence of a reasonable good faith belief that such patents applied to the MallTV Website warrants the drawing of an inference that EMG had a fraudulent intent in marking the MallTV Website with such patent numbers such that the marking of the MallTV Website with these numbers constituted false marking under 35 U.S.C. § 292. *See Clontech Labs. v. Invitrogen Corp.,* 406 F.3d 1347, 1352  (Fed. Cir. 2005).

**47.**    The fact that the MallTV Website may be covered by one or more patents does not render

the MallTV Website a patented product with respect to the '497, '881, '845, '698 or '196 Patents or remedy EMG's false marking with respect to those patents. "When the statute refers to an 'unpatented article' the statute means that the article in question is not covered *by at least one claim of each patent with which the article is marked.*" *Clontech,* 406 F.3d at 1351 (emphasis added).

48.    The inclusion of the statement that the MallTV Website "operates on proprietary technology that is protected by *one or more of the following United States Patents*" (emphasis added) does not remedy EMG's false marking with respect to the '497, '881, '845, '698 or '196 Patent. Under no circumstances can or does the MallTV Website operate on technology covered by any claim of the '497, '881, '845, '698 or '196 Patent. Thus, the statement that the MallTV Website "is protected" by "one or more of," and the implication that the MallTV Website could be covered by a claim of, the '497, '881, '845, '698 or '196 Patent is inaccurate.

49.    EMG should be fined for its false marking in accordance with 35 U.S.C. § 292.

## PRAYER FOR RELIEF

**WHEREFORE**, Continental prays for judgment:

A.      That EMG's Complaint be dismissed and EMG take nothing with respect to its claims in this action;

B.      Declaring U.S. Patent No. 7,020,845 not infringed by Continental;

C.      Declaring the asserted claims of U.S. Patent No. 7,020,845 invalid;

D.      Declaring that the asserted claims of U.S. Patent No. 7,020,845 cannot validly cover Continental's accused acts and systems;

E.      Declaring U.S. Patent No. 7,441,196 not infringed by Continental;

F.      Declaring the asserted claims of U.S. Patent No. 7,441,196 invalid;

G.      Declaring U.S. Patent No. 7,441,196 unenforceable;

H.      Declaring that the asserted claims of U.S. Patent No. 7,441,196 cannot validly cover Continental's accused acts and systems;

I.      Finding this case exceptional pursuant to 35 U.S.C. § 285;

J.      Declaring EMG falsely marked its products;

K.      Ordering that EMG pay a fine under 35 U.S.C. § 292;

L.      Awarding Continental its reasonable attorney fees and costs of this action pursuant to 35 U.S.C. § 285; and

M.      Awarding Continental such other and further relief as this Court deems just and proper.

Dated: July 10, 2009

Respectfully submitted,

By:/s/  Steven S. Boyd

    Robert J. McAughan, Jr.
    Texas Bar No. 00786096
    bmcaughan@lockelord.com
    Steven Boyd
    Texas Bar No. 24001775
    sboyd@lockelord.com
    Jeffrey A. Andrews
    Texas Bar No. 24050227
    jandrews@lockelord.com
    LOCKE LORD BISSELL & LIDDELL LLP
    600 Travis Street, Suite 3400
    Houston, Texas 77002
    Telephone:    (713) 226-1200
    Facsimile:    (713) 223-3717

*Attorneys for Defendant*
*Continental Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all the counsel of record, who are deemed to have consented to electronic service are being served this July 10, 2009, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

By: _/s/  Steven S. Boyd_____
(Printed name of signer)