IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| EMG TECHNOLOGY, LLC, | § § § | |
| Plaintiff, | § § | Civil Action No. 6:08-CV-00447 (LED) |
| v. | § § | Jury Trial Demanded |
| APPLE INC., AMERICAN AIRLINES, INC., DELL, INC., HYATT CORPORATION, MARRIOTT INTERNATIONAL, INC., & BARNES & NOBLE, INC. | § § § § § § § | |
| Defendants. | | |

**DEFENDANTS' MOTION TO TRANSFER**

Defendants American Airlines, Inc., Dell, Inc., Hyatt Corporation, Marriott Corporation, Apple Inc. and Barnes & Noble, Inc. move to transfer this case to the Western Division of the Central District of California ("CDCA") pursuant to 28 U.S.C. § 1404(a). In addition to the above-captioned case, EMG Technology, LLC is also the plaintiff in another case in this same Court against six other defendants (No. 09-cv-00367, or the "Microsoft case"). Defendants Microsoft, Scottrade, Southwest Airlines, Zagat Survey, and Comcast in the Microsoft case likewise move to transfer that case to the CDCA.[1] The remaining defendant in that case, Priceline.com, consents to transfer to the CDCA. (Carraway Decl. ¶ 27.) For the Court's convenience, this motion tracks the motion to transfer being filed in the Apple case.

## I. **PRELIMINARY STATEMENT**

Both pending EMG cases should be transferred to the CDCA because they have "no relevant factual connection to the Eastern District of Texas." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). In contrast, Plaintiff, almost all non-party witnesses, all the named inventors, and much of the relevant evidence are located in the CDCA or within its subpoena power.

The key facts that render the CDCA "clearly more convenient" than this District include:

- All three named inventors of the patents in suit reside in the CDCA, but only one of them is employed by Plaintiff. The other two named inventors are outside the subpoena power of this Court and accordingly cannot be compelled to attend trial;

- Every witness identified in Plaintiff's initial disclosures resides in the CDCA;

- Plaintiff is a California corporation with its principal place of business in the CDCA. It has no employees or business outside the CDCA;

- Over the course of more than a decade, EMG's sole principal—Elliot Gottfurcht—has paid three groups of computer programmers hundreds of thousands of dollars in an attempt to commercialize the technology in the patents in suit. All these groups of

---

[1] Defendants moving for transfer in both cases will be referred to as "Moving Defendants."

programmers are located within California, and two of them are located within the CDCA and performed all their work for Mr. Gottfurcht within the CDCA;

- In addition to the programmers described above, many other party and non-party witnesses reside in or within the subpoena power of the CDCA, including most of the attorneys who prosecuted the patents in suit and many witnesses knowledgeable about prior art;

- Defendants are scattered around the country. No development activities by any defendant occurred in the Eastern District of Texas, and no identified witness within any defendant's control is located here.

The Federal Circuit has made clear that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, -- F.3d --, 2009 WL 4842589, at *2 (Fed. Cir. Dec. 17, 2009). As discussed below, that is the case here.

## II. BACKGROUND

### A. The Two Pending EMG Cases

EMG filed its original complaint in the above-captioned case (the "Apple case") on November 24, 2008. In that first complaint, Apple—a California corporation—was the only defendant. Since then, EMG has amended its complaint five times, adding nine additional defendants. (*See* Dkt. No. 159.) There are now six defendants and two patents in suit.

On August 14, 2009, EMG filed its Complaint in the Microsoft case (No. 09-cv-00367) and has twice amended its complaint to add more defendants. (*See* Dkt. Nos. 6, 44 in No. 09-cv-00367.) Presently, there are six defendants in the Microsoft case. EMG asserts the same two patents in the two cases. (*See* Dkt. No. 113 at 2.)

EMG has propounded no written discovery requests in either case and has not noticed or taken any depositions. EMG has represented to the Court and to defendants' counsel that it intends to move to consolidate the two cases. (*See* Dkt. No. 113 in No. 08-cv-00447, at 2.)

B.  **The Parties**

*Plaintiff*: Plaintiff is a California corporation with its principal place of business in Los Angeles, in the CDCA. (Dkt. No. 159 ¶ 5.)[2]

*Defendants*: There are currently twelve defendants in the two related cases:

| Case | Defendant | Principal Place of Business |
|---|---|---|
| Microsoft case | Microsoft Corporation | Redmond, WA |
| | Scottrade, Inc. | St. Louis, MO |
| | Southwest Airlines Co. | Dallas, TX (NDTX) |
| | Priceline.com, Inc. | Norwalk, CT |
| | Zagat Survey, LLC | New York City, NY |
| | Comcast Corporation | Philadelphia, PA |
| Apple case | Apple Inc. | Cupertino, CA |
| | American Airlines, Inc. | Fort Worth, TX (NDTX) |
| | Dell, Inc. | Round Rock, TX (WDTX) |
| | Hyatt Corporation | Chicago, IL |
| | Marriott International, Inc. | Bethesda, MD |
| | Barnes & Noble, Inc. | New York City, NY |

(*See* Dkt. No. 159 ¶¶ 5-13; Dkt. No. 44 in No. 09-cv-00367, ¶¶ 5-11.) No defendant in either case is based in or has a principal business location in this District and Moving Defendants are aware of no development activity of any accused product that occurred in this District.

C.  **The Patents In Suit**

All three named inventors of the patents in suit reside in the CDCA. (Carraway Decl. ¶¶ 6-7; Exs. C-D.) The patents in suit claim priority to U.S. Patent No. 6,600,497, which includes five inventors in addition to the three named inventors on the patents in suit. Four of those five additional named inventors also reside in the CDCA. (*Id.* ¶¶ 8, 10; Exs. E, G.) Moreover, the current and past owners of the patents in suit and the alleged priority patent are located in the

---

[2] EMG claims that it "operates offices at 100 East Ferguson, Ste. 1200, Tyler, Texas" (Dkt. No. 159 ¶ 5), but its sole principal admitted in his deposition that Plaintiff has no employees or operations in Tyler, the office was set up by EMG's local counsel just before the first complaint in the Apple case was filed, no EMG employee has ever been to Tyler, and the office serves no purpose other than to store documents. (Carraway Decl. ¶ 23; Ex. T at 294-297.)

CDCA. (*Id.* ¶¶ 6-8, 11-12; Exs. C-E, H, I.) These patents were prosecuted by Blakely, Sokoloff, Taylor & Zafman, located in Los Angeles, CA (in the CDCA). (*Id.* ¶¶ 9, 13; Exs. F, J.) Other firms involved in the prosecutions include SoCAL IP Law Group LLP, of Westlake Village, CA, and Jeffer, Mangels, Butler & Marmaro, LLP, of Los Angeles, CA (both in the CDCA). (*Id.*) Finally, as discussed further in Section II.D below, Mr. Gottfurcht hired several entities located in the CDCA to try to commercialize the patents. (*Id.* ¶ 24; Ex. U at 159; *see also id* Ex. G.)

Below, along with their known residences, is a list of the witnesses who are likely to have knowledge related to the development, ownership, and prosecution of the patented technology:

| Relevance | Witness | Location |
|---|---|---|
| Named inventors of patents in suit with ownership interest in EMG | Elliott Gottfurcht | Santa Monica, CA (CDCA) |
| | Grant E. Gottfurcht | Pacific Palisades, CA (CDCA) |
| Named inventor of patents in suit | Albert-Michael C. Long | Irvine, CA (CDCA) |
| Named inventors of alleged priority patent to patents in suit | Donald Dukeshire | Huntington Beach, CA (CDCA) |
| | Manuel V. Beltran | Santa Ana, CA (CDCA) |
| | J. Teague McKnight | Formerly Los Angeles, CA (CDCA), now Park City, UT |
| | Stephen K. Woesner | Santa Ana, CA (CDCA) |
| | John Marinuzzi | Mission Viejo, CA (CDCA) |
| Attorneys who prosecuted applications leading to patents in suit and alleged priority patent | Thomas Ciotti | Palo Alto, CA |
| | Thomas M. Coester | Los Angeles, CA (CDCA) |
| | Scott Doyle | Washington, DC |
| | John E. Gunther | Westlake Village, CA (CDCA) |
| | Jun-Youg E. Jeon | Pasadena, CA (CDCA) |
| | Jonathan Miller | Los Angeles, CA (CDCA) |
| | Steven C. Sereboff | Westlake Village, CA (CDCA) |
| | Brennan C. Swain | Los Angeles, CA (CDCA) |
| Attempted commercialization of patents in suit | Art & Logic employees | Pasadena, CA (CDCA) |
| | Protovu | Foster City, CA |
| | Angel Gulermovich | Los Angeles, CA (CDCA) |
| | Bob Bajoras | Los Angeles, CA (CDCA) |
| | Rick Soss | Foster City, CA |
| | Online Labs (former) employees | Los Angeles, CA (CDCA) |
| Ownership interest in EMG | Marlo Longstreet | Pacific Palisades, CA (CDCA) |

(*Id.* ¶¶ 6-10; Exs. C-G.)

This Court has no power to compel any of these witnesses to trial. The CDCA, however, has full subpoena power over the vast majority of these witnesses, including all witnesses anywhere in the State of California. *See* Fed. R. Civ. P. 45(b)(2)(C); Cal. Civ. P. Code § 1989.

**D.     The Alleged Commercial Embodiment Of The Patents In Suit (MallTV)**

By their own admission, Mr. Gottfurcht and his son Grant (named inventors on the patents in suit) know very little about the technology described in the patents in suit. (Carraway Decl. Ex. T at 20-23, 127-128; Ex. U at 86-89.) Nonetheless, over the course of more than a decade, Elliot Gottfurcht spent hundreds of thousands of dollars hiring programmers in an attempt to commercialize the supposed inventions. (*Id.* Ex. T at 232-33; Ex. U at 159.) Mr. Gottfurcht's current brand name for the attempted commercialization is "MallTV." The programmers Mr. Gottfurcht hired include several named inventors of the alleged priority patent, as well as Angel Gulermovich, Bob Bajoras, and Rick Soss. (*Id.* Ex. T at 23-24, 172-78, 191-97, 205-09.) These individuals work or previously worked at three California firms—Art & Logic, Online Labs (apparently now defunct), and Protovu. (*Id.*) The witnesses and firms that still exist are all in the CDCA or other parts of California. (*Id.* Ex. G.)

Importantly, Mr. Gottfurcht and his hired programmers have never been able to make MallTV embody any claims asserted in the Apple case. EMG's attorneys admitted this on the record. (*Id.* ¶ 25; Ex. V at 282-83.) Subsequently, EMG took a contrary position in responding to Apple's counterclaims. (*See* Dkt. Nos. 171 ¶¶ 380-451; 183 ¶¶ 459-610.)

EMG seeks injunctive relief in these cases. (Dkt. No. 159 at 8; Dkt. No. 44 of No. 09-cv-00367, at 7.) Whether EMG has been irreparably harmed, however, turns in part on whether MallTV embodies the asserted claims. Whether MallTV practices the claims also is a factor in damages and marking. EMG's contrary positions on this issue need to be resolved, and it is the

California programmers hired by Mr. Gottfurcht (and, as demonstrated in their depositions, not Mr. Gottfurcht or his son) who know the facts that will resolve this issue.

E. **Significant Prior Art Evidence Is Located In California**

Defendants have uncovered significant prior art to the patents in suit. Much of this prior art was developed in California, and much of the evidence regarding this prior art (including documents and witnesses) likewise is located in California.

The patents in suit generally relate to providing web pages "associated with a sister site" and having a "simplified navigation interface" for display on mobile devices or televisions. (*See, e.g.*, '845 patent, claim 1.) The following figures from the patents illustrate this concept:



This idea was hardly new when the patent applications were filed. This field of porting Internet content for use on devices other than general purpose computers started taking shape in the mid-1990s (soon after the Internet became more common). This was years before the earliest priority date of the patents in suit. Witnesses and documents related to at least four important prior art systems—Unwired Planet/Openwave, Palm Web Clippings, Windows CE Mobile Channels, and WebTV—are located in or within the subpoena power of the CDCA.

***Unwired Planet/Openwave***: As early as 1996, Unwired Planet (now named Openwave

Systems), located in Redwood City, CA, distributed a "micro-browser" that enabled cell phones and other mobile devices to wirelessly access simplified versions of websites. (Carraway Decl. ¶¶ 18-20; Exs. O-Q.) Below are screenshots of a January 1998 version of the abcnews.com website (*id.* ¶ 18; Ex. O) optimized for use on mobile devices with Unwired Planet's technology:



Unwired Planet also filed prior art patent applications on this technology. (*Id.* ¶ 17; Ex. N.)

*Palm Web Clippings*: By 1999, Palm Computing, which is located in Sunnyvale, CA, developed technology that enabled Web developers to "clip" or designate specific information from a website for use on mobile devices, like its Palm VII handheld device. (*Id.* ¶ 14; Ex. K.) Palm VII users could access the "Web Clippings" over (slow) wireless connections and then browse simplified Web content. The following prior art photos (*id.* Ex. K at 123) show a regular Web page and the Web clip version formatted for a Palm VII mobile device:



| Regular MapQuest Web Page | MapQuest Web Clipping Page for Palm VII |

*WebTV*: WebTV was founded in the mid-1990s by Steve Perlman in Palo Alto, CA. (*Id.* ¶ 21; Ex. R.) The main purpose of a WebTV system was to integrate the World Wide Web ("WWW") with customers' home television systems. (*Id.* ¶ 15; Ex. L.) Specifically, it provided customers a simple interface to navigate the WWW on their television screens, and converted regular Web pages into a special format for display on the television screen.

*Windows CE Mobile Channels*: By 1998, Microsoft was providing a tool to create "mobile channels" on Windows CE mobile devices. (*Id.* ¶ 16; Ex. M.) A "mobile channel" is a website that has been reformatted specifically for viewing on a mobile device. Some witnesses and documents pertaining to this technology are located in the CDCA. (*Id.* ¶ 26; Ex. W.)

Key third-party witnesses knowledgeable about all four of these prior art systems are located in or within the subpoena power of the CDCA, as listed below:

| Subject Matter | Witness | Location |
| --- | --- | --- |
| Knowledge of development, publications, patenting, and the public use of Unwired Planet | Openwave Systems, Inc. employees | Redwood City, CA |
| | Tim Hyland | Bay Area, CA |
| | Alain Rossmann | Menlo Park, CA |
| | Peter King | Bay Area, CA |
| | Bruce Schwartz | Bay Area, CA |
| | Russell Greer | Bay Area, CA |
| | Mark Fox | San Francisco, CA |
| | Andrew Laursen | Bay Area, CA |
| | Mark Lentczner | Mountain View, CA |
| | Brad Sandman | Bay Area, CA |
| Knowledge of development, publications and public use of Windows® CE mobile channels | Chris De Herrera | Los Angeles, CA (CDCA) |
| Knowledge of development and public use of WebTV | Bruce Leak | Los Altos, CA |
| | Stephen G. Perlman | Mountain View, CA |
| Knowledge of development and public use of Palm Web Clippings | Palm, Inc. employees | Sunnyvale, CA |

(*Id.* ¶ 10; Ex. G; *see also id.* ¶¶ 2-4; Ex. A.)

## III. THE SECTION 1404(A) TRANSFER INQUIRY CLEARLY FAVORS TRANSFER HERE

The Court has discretion under 28 U.S.C. § 1404(a) to transfer this case, "[f]or the convenience of parties and witnesses, in the interest of justice, ... to any other district or division where it might have been brought." The preliminary inquiry under Section 1404(a) is whether the case could have been filed in the district to which transfer is sought. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (*"Volkswagen II"*). There can be no dispute that this case could have been brought in the CDCA: the CDCA has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), venue is proper there, and all defendants are amenable to process there. Once that threshold inquiry is met, the Fifth Circuit applies the "public" and "private" factors to determine whether the transferee venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

### A. The CDCA Is A "Clearly More Convenient" Forum For Witnesses

The Federal Circuit has noted that perhaps the most "important factor" in analyzing a transfer request is the "convenience for and cost of attendance of witnesses." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Several important rules govern this factor.

First, "the convenience of the nonparty witnesses is accorded the greatest weight." Indeed, "[t]his factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue." *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 2009 WL 1809978, at *9 (E.D. Tex. 2009) (J. Davis).

Second, to find the transferee venue clearly more convenient, the Court need not find it more convenient for all witnesses, nor that a majority of witnesses live there. *Genentech*, 566 F.3d at 1345. Instead, if a substantial number of identified witnesses reside in the transferee venue and none resides in the present venue, this factor weighs substantially in favor of transfer.

*Id.* ("Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer.").

Third, the Fifth Circuit employs a "100 mile rule" in analyzing this factor. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009) (J. Davis). If, as here, the two venues in question are more than 100 miles apart, the Court must determine the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *Volkswagen II*, 545 F.3d at 317. This is because "it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2009). The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue. *Volkswagen II*, 545 F.3d at 317.

### 1. The CDCA is "clearly more convenient" for non-party witnesses and has absolute subpoena power over most of them

No known non-party witness resides in the Eastern District of Texas. In contrast, several dozen identified non-party witnesses reside in the CDCA or its neighboring California districts (and thus within the CDCA's subpoena power). (Carraway Decl. ¶¶ 6-10; Exs. C-G.) For all these witnesses, the CDCA is clearly more convenient, as they either reside in that district or within a short drive or flight away. (*Id.* ¶¶ 2-4; Ex. A (identifying conveniences for witnesses measured by travel time and distance).) In contrast, the Eastern District of Texas is over 1000 miles away from these witnesses. The average travel required for non-party witnesses is over 1100 miles more or nearly three hours by plane to Tyler, Texas than to Los Angeles, California. (*Id.*) Thus, the convenience of the non-party witnesses weighs heavily in favor of transfer. *See*

*Nintendo*, 2009 WL 4842589, at *3 (transferring to Washington where average domestic witness travel time was 700 miles more to Texas than to Washington); *Genentech*, 566 F.3d at 1343; *ATEN Int'l*, 2009 WL 1809978, at *9 ("This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.").

Furthermore, having subpoena power over these non-party witnesses, including for trial, is extremely important for defendants. As the Federal Circuit explained in *Genentech*, witness location impacts more than the issue of convenience; it also impacts a party's ability to secure the attendance of witnesses at trial. *Genentech*, 566 F.3d at 1345.[3]

Pursuant to Fed. R. Civ. P. 45(b)(2)(C) and California law, the CDCA has "absolute subpoena power" over all non-party witnesses identified in this Motion who reside **anywhere in California**. A subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide service of a subpoena. Fed. R. Civ. P. 45(b)(2)(C). California has such a state-wide service statute. Cal. Civ. P. Code § 1989 (providing that witnesses are obliged to attend a proceeding "before any court, judge, justice or any other officer" if he or she is "a resident within the state"). Thus, the CDCA has "absolute" subpoena power over any California resident, and defendants could compel any witness who resides in California to appear at a trial in the CDCA, including the majority of the non-party witnesses identified herein.[4]

---

[3] The U.S. Supreme Court has recognized that, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), *superseded by statute*, 28 U.S.C. § 1404(a); *see also Volkswagen II*, 545 F.2d at 316 (weighing in favor of transfer because the transferee forum "enjoy[s] absolute subpoena power for both depositions and trial").

[4] *See also Morris v. Safeco Ins. Co.*, 2008 WL 5273719, at *5 (N.D. Cal. Dec. 19, 2008) ("The Eastern District [of California]'s subpoena power extends throughout the state of California pursuant to Rule 45 of the Federal Rules of Civil Procedure, which provides that a subpoena may be served anywhere within the state of the issuing court if a state statute allows state-wide service of a subpoena issued by a state court of general jurisdiction.... Section 1989 of the California Code of Civil Procedure authorizes such state-wide service.").

Because the CDCA affords defendants the ability to compel several dozen non-party witnesses to appear for trial and because this District does not, this factor strongly favors transfer to the CDCA. *See Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### 2. The CDCA is "clearly more convenient" for party witnesses

No party in the two cases is based in the Eastern District of Texas. Nor are Moving Defendants aware of any party witness residing in this District.

In contrast, Plaintiff is a California company with its principal place of business in the CDCA, and all of the witnesses it identified in its initial disclosures reside in California. (Carraway Decl. ¶ 5; Ex. B.) Defendant Apple is headquartered adjacent to the CDCA in Northern California. Defendant Microsoft is headquartered in Washington and has substantial research offices in Northern California. While a few defendants—Dell, American Airlines, and Southwest Airlines—are located in Texas, they do not have principal places of business in the Eastern District of Texas, have no known witness located in the Eastern District of Texas, and all join this Motion. The remaining defendants are based in New York, Connecticut, Maryland, Missouri, Pennsylvania, and Illinois. The "100 mile rule" is applied less rigidly and with less weight for these witnesses who would be required to travel "a significant distance no matter where they testify." *Genentech*, 566 F.3d at 1343-44; *see also ATEN Int'l*, 2009 WL 1809978, at *10. In any event, because defendants either join in moving to transfer or do not oppose transfer, the locations of their witnesses do not weigh against transfer.[5]

---

[5] *See, e.g., SMDK Corp. v. Creative Labs, Inc.*, 2:08-CV-00026-TJW, Dkt. No. 174, at *2 (E.D. Tex. Dec. 11, 2009) ("The Northern District of California may potentially be less convenient for defendants located closer to the Eastern District of Texas, to wit, the New York, Arkansas, and Indiana defendants, but no defendant opposes the present motion to transfer.").

In sum, a large number of party witnesses are located in the CDCA, no party witness resides in this District, and other witnesses either are much closer to the CDCA or would find transfer no less convenient. (Carraway Decl. ¶¶ 2-4; Ex. A.) On balance, the CDCA clearly would be more convenient to the parties and party witnesses than this District. This factor weighs heavily in favor of transfer.[6]

B. **The CDCA Would Create A Greater Ease Of Access To Sources Of Proof**

Plaintiff's documents relevant to this litigation were at one time located in the CDCA, where it and its business are based. Plaintiff's local counsel set up an office for Plaintiff in Tyler, Texas just before Plaintiff first initiated litigation at the end of 2008, and Plaintiff shipped some documents to that office. (Carraway Decl. Ex. T at 294-97.) No EMG officer has been to that office. *Id.* This transfer of documents to Plaintiff's office in Tyler solely in preparation for this litigation cannot weigh against transfer. *Hoffman-La Roche*, 587 F.3d at 1336.

In contrast, the CDCA is where all the named inventors and owners of the patents in suit and most of the prosecution attorneys—and presumably the documents of all of these persons— are located. California is also where important prior art witnesses—and presumably their documents—are located. (Carraway Decl. Exs. C-G.) And, California is where defendant Apple's documents are located. In contrast, Moving Defendants are not aware of any relevant document that is located within the Eastern District of Texas.

Documents possessed by several other parties are located outside both this District and the CDCA (e.g., Washington, New York). The location of those documents is mostly irrelevant

---

[6] *See, e.g., Genentech*, 566 F.3d at 1345 (ordering transfer to N.D. Cal., where one defendant was based, while another defendant was nearby in the S.D. Cal., and plaintiff was located in Europe); *Hoffman La-Roche*, 587 F.3d at 1338 (ordering transfer to E.D.N.C., where defendant was located, while plaintiff was located in California and other defendants were in Michigan and Europe); *Transauction LLC v. Bidz.com, Inc.*, No. 2:08-CV-00232-DF, at *2 (E.D. Tex. Aug. 3, 2009) (ordering transfer to N.D. Cal., where plaintiff and one defendant were based, even though plaintiff was legally organized as a Texas company).

because they will need to be transported whether the case remains in this District or is transferred. *See Genentech*, 566 F.3d at 1346 (finding that this factor weighs in favor of transfer because no document is housed in Texas, and transporting documents housed outside of transferee district would only be "slightly more inconvenient"). As between the CDCA and this District, the CDCA is clearly more convenient for accessing sources of proof, and this factor weighs heavily in favor of transfer.

### C. The CDCA Has A Local Interest In Having This Issue Decided In Its District, But The Eastern District Of Texas Does Not

Determining which venue has a local interest in this case requires a "factual connection" with the transferor or transferee venue. *ATEN Int'l*, 2009 WL 1809978, at *11. In *ATEN*, this Court found that, because the plaintiff's and one defendant's principal places of business were in California, California had "a particular local interest in th[e] suit no matter the outcome of the case." *Id.* In analyzing this factor, this Court held that "the mere fact that an accused product is available in this district is not a particularized interest that weighs against transfer." *Id.*

As was the case in *ATEN*, jurors in the proposed transferee forum have a unique interest in deciding this litigation—Plaintiff has its principal place of business in the CDCA, and the patents in suit were developed and prosecuted there. And, because important prior art for this "mobile website" field of technology was developed in California, the people of that state have a greater interest in adjudicating the validity of the patents in suit.

In contrast, the Eastern District of Texas—at most—has a non-particularized interest in removing alleged infringement from within its borders based on widely-sold products or technologies. This is an interest that "'could apply virtually to any judicial district' … [and is] disregarded in favor of particular local interests." *Fujitsu Ltd.*, 639 F. Supp. 2d at 769 (quoting

*Volkswagen II*, 545 F.3d at 318). California's strong, particular interest in this litigation heavily favors transfer. *See, e.g., Hoffman-La Roche*, 587 F.3d at 1338.

    **D.    Neither District Has An Advantage Regarding Practical Problems, Administrative Difficulties, The Governing Law, Or Conflicts Of Laws**

EMG has indicated an intent to seek consolidation of its two cases. Transferring both would ensure the same judicial economy as transferring neither, making this factor neutral.

Both this District and the CDCA are busy districts with similar median time-to-trial numbers, with only a 3.5 month difference in favor of this District.[7] (Carraway Decl. ¶ 22; Ex. S.) Neither district has any particular advantage with regard to familiarity with the patent law, and there are no issues regarding conflicts of laws. These factors are neutral.

## IV.    CONCLUSION

The Fifth Circuit's test for determining whether transfer is appropriate clearly favors transfer here. Private interest factors 1, 2, and 3 and public interest factor 2 strongly favor transfer. The remaining factors are neutral. Accordingly, Moving Defendants' motions to transfer both of these related cases to Plaintiff's home district should be granted.

                              Respectfully submitted,

Dated: January 7, 2010          By:    */s/ Russell J. Genet, by permission DJR*
                                                Russell J. Genet
                                                David C. McKone
                                                Nixon Peabody LLP
                                                300 S Riverside Plaza, 16th Floor
                                                Chicago , IL 60606
                                                Telephone : (312) 425-8516
                                                Facsimile: (312) 425-3909
                                                Email: rgenet@nixonpeabody.com

---

[7] *See Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891, at *5 (E.D. Tex. Feb. 9, 2009) ("This Court is not persuaded that this 4.5 month time difference weighs for or against transfer.").

Constance M Boland
NIXON PEABODY LLP
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
(212) 940-3000 Telephone
(212) 940-3111 Facsimile

Elizabeth L. DeRieux
Texas Bar No. 05770585
S. Calvin Capshaw
Texas Bar No. 03783900
Daymon Jeffrey Rambin
Texas Bar No. 00791478
CAPSHAW DERIEUX LLP
1127 Judson Road, Suite 220
P.O. Box 3999 (75606-3999)
Longview, Texas 75601-5157
Telephone: (903) 236-9800
Fax: (903) 236-8787
E-mail: ederieux@capshawlaw.com
E-mail: ccapshaw@capshawlaw.com
E-mail: jrambin@capshawlaw.com

**ATTORNEYS FOR DEFENDANTS AMERICAN AIRLINES, INC., & HYATT CORPORATION**

By: /s/ Russell J. Genet, by permission DJR
Russell J. Genet
David C. McKone
Nixon Peabody LLP
300 S Riverside Plaza, 16th Floor
Chicago, IL 60606
Telephone: (312) 425-8516
Facsimile: (312) 425-3909
Email: rgenet@nixonpeabody.com

Constance M Boland
NIXON PEABODY LLP
Nixon Peabody LLP
437 Madison Avenue
New York, NY 10022
(212) 940-3000 Telephone
(212) 940-3111 Facsimile

**ATTORNEYS FOR DEFENDANT DELL, INC.**

-16-

By: */s/ John M. Guaragna  by permission DJR*
John M. Guaragna
DLA Piper US LLP
401 Congress Ave, Suite 2500
Austin , TX 78701-3799
Telephone:  (512) 457-7000
Facsimile:  (512) 457-7001
E-mail: John.Guaragna@dlapiper.com

**ATTORNEYS FOR DEFENDANT MARRIOTT INTERNATIONAL, INC.**

By: */s/ David J. Healey, by permission DJR*
David J. Healey, State Bar No.: 09327980
Garland T. Stephens, State Bar No.: 24053910
John R. Lane, State Bar No.: 24057985
FISH & RICHARDSON P.C.
1221 McKinney Street, Suite 2800
Houston, TX  77010
Telephone: 713-652-0115
Facsimile:  713-652-0109
Email: healey@fr.com
Email: stephens@fr.com
Email: jlane@fr.com

**ATTORNEYS FOR DEFENDANT APPLE INC.**

By: */s/ Neil J. McNabnay by permission DJR*
Neil J. McNabnay
FISH &RICHARDSON
1717 Main St.
Suite 5000
Dallas , TX 75201
(214)747–5070
Fax: 12147472091
E-mail: mcnabnay@fr.com

**ATTORNEYS FOR DEFENDANT BARNES & NOBLE, INC.**

## CERTIFICATE OF CONFERENCE

On January 5, 2010, attorneys J. Christopher Carraway (representing Microsoft), Anthony Fenwick (representing Comcast), Russell Genet (representing Dell, Hyatt, and American Airlines), and D. Jeffrey Rambin (representing American Airlines), met and conferred by telephone with attorneys Shawn Hansen and Charlie Ainsworth, representing EMG, regarding the issues presented herein. Chris Carraway and Shawn Hansen further discussed these issues by email and telephone on January 6, 2010. As movants understand it, EMG opposes transfer, and accordingly, the parties are at an impasse.

/s/ Russell J. Genet by permission DJR
Russell J. Genet

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 7th day of January, 2010.

/s/ Russell J. Genet by permission DJR
Russell J. Genet